No. 20,955.

WALLACE C. RANDALL AND HARRY L. RANDALL, *Appellees*, v.
S. D. RANDALL et al., *Appellants*.

### SYLLABUS BY THE COURT.

1. PARTITION — *Delivery of Deeds — Trial — Motions Properly Denied.*
Rulings striking out evidence, admitting evidence, denying a motion to
open the case for further testimony, and denying a motion to amend
an answer to introduce a new issue, considered and approved.

2. SAME — *Hearing of Motions—Evidence—Counter Affidavit—Judicial
Discretion.* On the hearing of a motion addressed to the discretion of
the court and supported by affidavits, it is not error for the court to
receive and consider counter affidavits tending to refute the facts
stated in the affidavits supporting the motion and presenting other
grounds for denying the motion.

Appeal from Johnson district court; JABEZ O. RANKIN,
judge. Opinion filed July 7, 1917. Affirmed.

*J. W. Parker,* of Olathe, *John J. Riling,* and *Edward T.
Riling,* both of Lawrence, for the appellants.

*W. D. Morrison,* and *C. L. Randall,* both of Olathe, for the
appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one for the partition of real es-
tate. The contested issue was whether or not certain deeds
had been delivered. The plaintiffs prevailed and the defend-
ants appeal.

The real estate belonged to John D. Randall, who died in-
testate in August, 1904. His wife, Sarah Randall, died in-
testate in March, 1914. Six children survived their parents:
Wallace C. Randall and Harry L. Randall, the plaintiffs; Sam
D. Randall, Emma Rudell, Alice Bennett, and Charles E. Ran-
dall, the defendants. The facts of the case and the claims of
the litigants are clearly presented in detail by the findings of
fact returned by the jury and adopted by the court:

"Did J. D. Randall on the 12th day of August, 1901, make and execute
a warranty deed conveying a portion of the real estate described in plain-
tiffs' petition to his wife, Sarah Randall? A. Yes.

"If you answer the above question in the affirmative, did J. D. Randall place the said deed in his trunk with his own papers and keep it there until his death? A. Yes.

"Did Sarah Randall ever personally have possession of said deed before the death of J. D. Randall? A. No.

"Did anyone ever have possession of said deed for Sarah Randall during the lifetime of J. D. Randall? A. No.

"Did J. D. Randall ever in his lifetime deliver said deed to his wife directly or to anyone for her, intending to convey the title to said property to her? A. No.

"Did J. D. Randall retain possession of and control of the deed to Sarah Randall during his lifetime? A. Yes.

"Did Sarah Randall execute deeds to certain of the property involved in this suit to her children, Alice Bennett, Emma Rudell, Charles E. Randall and Harry L. Randall? A. Yes.

If you answer the last question in the affirmative, where did she place said deeds after they were executed by her? A. In trunk.

"Did Sarah Randall ever deliver either of said deeds personally to any of the grantees named in said deeds? A. No.

"Did Alice Bennett personally have possession of the deed to her at any time before the death of Sarah Randall? A. No.

"Did Emma Rudell personally have possession of the deed to her at any time before the death of Sarah Randall? A. No.

"Did Charles Randall personally have possession of the deed to him at any time before the death of Sarah Randall? A. No.

"Were any or either of the deeds made by Sarah Randall delivered to any other person for the grantee named therein before the death of Sarah Randall? A. No.

"If you answer that Alice Bennett had possession of the deed referred to before the death of Sarah Randall what did she do with it? A. Did not have it.

"If you find that Emma Rudell had possession of the deed to her before the death of Sarah Randall, what did she do with it? A. Did not have it.

"If you find that Charles Randall had possession of the deed to him before the death of Sarah Randall, what did he do with it? A. Did not have it.

"Were the deeds in question in the trunk at the home of Sarah Randall on the day before Sarah Randall's death? A. Yes.

"Was it the intention of Sarah Randall that said deeds or any of them should be delivered before her death? A. No.

"Did Charles E. Randall have in his possession about the year 1908 the deed which is in evidence, to him from his mother? A. No.

"Did Charles give that deed to S. D. Randall? A. No.

"Did Emma Rudell have in her possession the deed to her from her mother, which is in evidence, in the year 1910? A. No.

"Did Emma Rudell give that deed to S. D. Randall? A. No.

Randall v. Randall.

"Did S. D. Randall have in his possession, during his mother's life-time, the deed from his mother to Alice Bennett, which is in evidence? A. No.

"Did S. D. Randall have in his possession during his father's lifetime, the deed from his father, J. D. Randall, to his mother, Sarah Randall, which is in evidence? A. No."

It is assigned as error that the court struck out certain testimony. Emma Rudell, a witness in her own behalf, testified on direct examination that before her mother's death she had in her possession the deed to her from her mother, and that she gave the deed to her brother, S. D. Randall, known as "Pete," so her mother could have the use of the property during the mother's lifetime. On cross-examination she was asked questions which she answered as follows:

"Q. When did Pete give you this deed—how long ago? A. About a year ago.

"Q. He gave you this deed after your mother died, didn't he? A. No, sir.

"Q. Do you tell this jury and this court that Pete didn't give you this deed since your mother died? A. Pete gave me that deed since mother died.

"Q. And that is the first time that you ever did have it, isn't it? A. No, my mother gave it to me.

"Q. That is when you first got it? A. Yes.

"Q. And she gave it to you before you gave it to Pete? A. Yes."

On motion of the plaintiffs the answer that the witness' mother gave her the deed was stricken out, because the witness was incompetent to testify to that fact. The cross-examination related to the time when the witness first had possession of her deed. She volunteered the statement that her mother gave it to her. While the succeeding question would have been in better form if it had been, "And you had the deed before you gave it to Pete?" there was clearly no purpose to call out matter concerning which the witness was not qualified to testify, and the plaintiffs were entitled to have the statement withdrawn from the jury.

S. D. Randall was examined in chief as a witness for the defendants, respecting his possession of the deed to Alice Bennett from her mother. The plaintiffs interposed the following objection:

"If he obtained that instrument directly from his mother, the grantor in that deed I object, because he is incompetent to testify to that fact

under the statute; it is simply a way to avoid the letter of the statute and the decisions of our supreme court; I think the court should ascertain if it comes in that way, that it is incompetent."

The objection was overruled, and for the purpose of disclosing the incompetency of the witness the plaintiffs interposed a preliminary question, which was answered as follows:

"Q. Did it come into your possession by your mother handing it to you, or giving it to you? A. It did."

The objection that the witness was incompetent was renewed, and the answer to the preliminary question was stricken out. The plaintiffs were seeking to keep out incompetent testimony, and not to use a disqualified witness. Therefore, the rule that the incompetency of a witness is waived by cross-examining him in respect to transactions with a deceased person, as new matter, has no application.

It is assigned as error that the court admitted improper testimony. The issues were so framed that the defendants assumed the burden of proof. They introduced in evidence the declarations of Sarah Randall respecting the disposition of her property, tending to show delivery of her deeds to her children. The defendants, however, objected to proof of other declarations of the grantor offered by the plaintiffs, very clearly indicating nondelivery of the deeds. The objections were properly overruled. Other evidence which need not be recited was properly admitted over the objection of the defendants.

The defendants debate the effect of the presumption of delivery attending the possession of deeds, in connection with the sufficiency of the evidence to sustain the findings. There is nothing to indicate that the court, when it adopted the jury's findings, did not give due weight to the presumption. Besides this, there was some conflict in the evidence, and different inferences might be drawn from the evidence. The defendants' theory of the case did not impress either the court or the jury very strongly. Interpreting the evidence, as this court must do, most favorably to the plaintiffs, the presumption was overthrown.

The findings of fact were returned and the jury were discharged on January 20, 1915. On March 3, 1915, but before final judgment was rendered, the defendants moved the court

Randall v. Randall.

to open the case for further testimony. In support of the motion affidavits were filed indicating what the testimony would be. This showing was met by counter affidavits. The court held the matter under advisement until September 27, 1915, when the motion was overruled. The defendants say the court should not have permitted the plaintiffs to contest the showing made in support of the motion, and that the motion should have been sustained. There were good reasons for denying the motion without entertaining a counter showing. The subject of opening the case for further testimony was one resting in the discretion of the court, and if none but the affidavits filed by the defendants were considered it could not be said that the court abused its discretion in denying the motion. It would be a strange rule of procedure which would prohibit a court from enlightening an exercise of its discretion by hearing from both sides, and no such rule exists in this state. Considering the showing of the plaintiffs and the countershowing in connection with the previous proceedings, it is clear the court was abundantly justified in denying the motion.

The defendant, Charles E. Randall, filed his answer and filed a cross-petition on May 16, 1914. The trial closed more than eight months later. The motion to reopen the case was denied more than eight months after the trial closed. More than three months after the motion to reopen the case had been overruled, Charles E. Randall disclosed to the court a different basis of title which he had thought of, and moved for leave to amend his pleading to present the new issue. He asserted that in August, 1901, he made an oral contract with his parents to stay with them and care for them until they died, in consideration of which he was to receive at their death the land which he claimed. Pursuant to this contract, he had gone into possession; had made lasting and valuable improvements; had used all the rents and profits of the land in caring for his parents, and had expended some money besides, relying upon this oral contract, which he had fully performed on his side. The motion was accompanied by affidavits and was opposed by counter affidavits, some of which went so far as to declare that Charles was the one who had been supported, and not his

parents. All that has been said respecting the ruling on the application to reopen the case applies to the ruling denying this motion.

The judgment of the district court is affirmed.